Argued and submitted November 9, 1983, reversed and remanded with instructions January 25, reconsideration allowed; former opinion adhered to as modified April 4 (67 Or App 517, 678 P2d 781), reconsideration denied May 25, petitions for review denied June 26, 1984 (297 Or 340)

QUINN et al,
*Respondents,*

*v.*

SCHEU,
*Defendant,*

*and*

WALTER E. HELLER WESTERN
INCORPORATED,
*Appellant.*

(A8012-07087; CA A25507)

675 P2d 1078

Mary D. Chaffin, Portland, argued the cause for appellant. With her on the briefs were Michael H. Schmeer and Black, Tremaine, Higgins, Lankton & Krieger, Portland.

Kathryn H. Clarke, Portland, argued the cause for respondents. With her on the brief were Lawrence Wobbrock and Hansen & Wobbrock, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Plaintiffs brought this action to recover damages for the conversion of 2500 copies of a book, which they co-authored, and certain plates and photographs used in producing the books. Defendant Heller appeals from a judgment entered on a jury verdict for $31,000. Because we conclude that the court erred in failing to grant Heller's motion for a directed verdict with respect to the books and plates, we reverse; however, plaintiffs were entitled to a judgment for the value of the photographs, a value which is not in dispute. Accordingly, we remand with instructions to enter a judgment for plaintiffs for $2,000.

In August, 1979, Heller perfected a security interest in the accounts and inventory of Paramount Printing and Lithographing Company. Paramount and Stop-and-Go Printing Company were wholly owned subsidiaries of RWS Construction Company, of which defendant Scheu and his wife were the sole shareholders.[1]

Plaintiffs, father and son, formed a partnership, Educational Adventures, part of the purpose of which was to produce educational books on Oregon rivers. In October, 1979, defendant Scheu agreed to print 4,000 copies of plaintiffs' book, *Handbook of the Illinois River,* for $10,000.[2] Plaintiffs made an initial payment of $2,000 to Paramount and agreed to make final payment on delivery. The evidence at trial showed that plaintiff Dr. Quinn brought the book manuscript and photograph negatives to the Paramount plant in early October. During the first week in October, plaintiffs received a bill from Paramount in the amount of $4,943. Plaintiff James W. Quinn contacted Scheu about the bill, because it was plaintiffs' understanding that no further payment was due until delivery. Scheu told plaintiffs to ignore the bill.

On December 17, 1979, defendant Heller sent plaintiffs a notice of assignment, which stated that Heller had a perfected security interest in Paramount's accounts and inventory, and that plaintiffs should pay $4,943 directly to

---

[1] Defendant Scheu did not appear at trial.

[2] Plaintiffs were precluded from proving the existence of an oral agreement with defendant Scheu because of the Statute of Frauds.

Heller or notify Heller by December 31, 1979, if payment had been made or if the amount billed was incorrect. Plaintiff James W. Quinn again contacted Scheu, who told him to disregard the notice. Plaintiff Dr. Quinn did not learn of the notice until after he met with Scheu on December 24, 1981, and paid the balance of obligation in full. At Scheu's request, Dr. Quinn endorsed the check, payable to Educational Adventures, to Stop-and-Go Printing Company. Although plaintiffs received approximately 1500 copies of the books, Heller took possession of the remaining copies as part of Paramount's inventory pursuant to the terms of the security agreement and liquidated Paramount.

Heller contends that it was entitled to a directed verdict[3] on the conversion claim because, as a holder of a perfected security interest in Paramount's inventory, it was free to dispose of plaintiffs' books and plates after Paramount's default. Heller concedes, however, that the photographs furnished by plaintiffs for use in producing the books were not inventory and that plaintiffs are entitled to $2,000 for their loss.[4] Plaintiffs argue that, notwithstanding Heller's perfected security interest, Heller had no right to dispose of the books or plates, because plaintiffs were "buyers in the ordinary course of business" and were entitled to them free of that interest.

ORS 79.3070(1) provides:

"A buyer in ordinary course of business as defined in ORS 71.2010(9), * * * takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence."

ORS 71.2010(9) defines "buyer in ordinary course of business" as follows:

" 'Buyer in ordinary course of business' means a person who in good faith and *without knowledge that the sale to him*

---

[3] Plaintiffs urge us to disregard defendant's assignment relating to the court's denial of its motion for a directed verdict, because defendant failed to set out verbatim the motion and the grounds on which it was submitted to the trial court as required by ORAP 7.19(2). However, defendant's reply brief cured any deficiency, and there is no prejudice to plaintiffs resulting from defendant's initial omission. *Castor v. Erlandson,* 277 Or 147, 150, 560 P2d 267 (1977).

[4] At trial, plaintiffs moved to amend the pleadings to conform to the proof and prayed for $2,000 for conversion of the photographs.

*is in violation of the ownership rights or security interest of a third party* in the goods buys in ordinary course from a person in the business of selling goods of that kind * * *." (Emphasis supplied.)

Given the position of the parties on appeal, the only question we need to decide is whether plaintiffs, through receipt of the notice of assignment of December 17, 1979, were informed that payment to anyone other than Heller was in violation of Heller's security interest.[5] At trial, plaintiffs testified that they understood that their agreement was either with Scheu personally or with Stop-and-Go Printing Company. Therefore, plaintiffs contend that whether the notice of assignment of the Paramount accounts and security interest in its inventory was sufficient to inform them that payment to Scheu would violate Heller's security interest was a question for the jury. We disagree. Although the evidence indicated that plaintiffs may have believed that their agreement was with Scheu or Stop-and-Go, it also showed that plaintiffs' initial payment was to Paramount, that they visited the Paramount plant on at least one occasion, and that they were aware that some of the work on the books was being done by Paramount. Given those undisputed facts, we conclude that the notice of assignment received by James W. Quinn, knowledge of which was imputed to his partner-father, was adequate as a matter of law to inform plaintiffs that payment to anyone other than Heller would violate Heller's security interest.

Under ORS 79.3180(3), on receipt of the notice of assignment, plaintiffs had a right to demand proof of the assignment and of the nature of the rights claimed by Heller under the assignment. The burden was on them to make a demand on Heller to prove its entitlement to payment under the assignment. *See Commercial Trading Co., Inc. v. Milsan Mills, Inc.,* 19 Pa D&C 3d 64, 67-68, 32 UCC RS 612 (1981).

---

[5] We decide that question only in the context in which we understand it to have been presented during the trial and as argued in the briefs in this court. We understand plaintiffs' position to be that adequacy of the notice is the decisive issue and that that was a jury question. If plaintiffs' position had been that the books ceased to be inventory once they were printed and became identified to the contract, then the adequacy of the notice would be relevant only if plaintiffs' payment to Stop-and-Go rather than to Heller was in violation of Heller's security interest in the books. If it did not, it might be that Heller was not entitled to sell the books, but plaintiffs would be required to pay Heller the amount they paid Stop-and-Go after receipt of the notice. We do not address those questions.

They failed to do so; instead, they relied on a principal of the assignor of the account for instructions. Having chosen to rely on Scheu's statements, plaintiffs do not fall within the statutory definition of buyers "in the ordinary course of business." Heller was entitled to a directed verdict on plaintiffs' claim for conversion of the books and plates.

Our disposition of the case makes it unnecessary to consider defendant's other assignments of error. However, because Heller concedes that plaintiffs are entitled to the value of the photographs and does not dispute the value ($2,000) that plaintiffs put on them, we may direct that plaintiffs have judgment for that amount. Or Const, Art VII, § 3.

Reversed and remanded with instructions to enter judgment for plaintiffs for $2,000.